U.S. v. Wilkosek Good morning, Your Honors. I represent Brian Wilkosek, who the Court knows was sentenced to $713,000 in restitution payments 11 years ago. Since that time, and that was in 2004, it has been unearthed that the banks to whom he has been ordered to pay that restitution, their conduct lay at the epicenter of the near financial collapse of this nation. And as a consequence, they were not victims at all, they were perpetrators, as the multi-billion dollar judgments and settlements and charges over the years that followed have demonstrated. You argue that the red flags that present themselves in the loan documents and process illustrate that the financial institutions could not have reviewed or relied on the fraudulent documents and thus they were not victims. But wasn't that argument available at the time of sentencing because those documents and the process was known at that time? And isn't the writ of Quorum Novus Limited only to claims that could not have been raised at the time of conviction or direct appeal? You're absolutely right about most of that, but the difficulty is that that argument was legally unavailable because at that time you had a case called United States v. Berman, authored by Judge Posner, which said that no matter how contributory negligent a bank might be in terms of looking at the things it had available to it, if there was a fraud teaser out there, contributory negligence is no defense to restitution. But the sea changed a year ago with the case of Perano, again ironically authored by Judge Posner, where he then talks in a very different way, or this court talks in a very different way, and it says that if there is an absence of evidence of reliance on the fraudulent information that's given to a bank, it cannot be a victim for purposes of restitution. So the argument was unavailable 11 years ago, otherwise it would have been pressed. And it wasn't just this court 11 years ago that would not allow that argument. The courts throughout the nation would not either. So in answer to your question, Judge, it was unavailable. Did Perano overrule that other decision? Pardon me? Did Perano overrule that other decision? Well, one might say that it either did so sub silencio or there's just been a gradual change in the law or not so gradual. Or one might say that the two addressed different questions. Well, I don't think that they did. When the issue is whether or not there has to be reliance for purposes of a restitution victim in both cases. Well, one dealt with contributory negligence. Pardon me? One dealt with contributory negligence, the earlier case. On the part of the bank. The later case dealt with the question of reliance for restitution purposes. But it was the same question in terms of whether or not a bank relied or not is the flip side or the opposite side of the coin of whether or not there's been negligence or whether they were reasonable in what they looked at and how they assessed it. It's the identical question. In this case, Kay Elliott, for example, bought 27 properties. You have to stand for the microphone. I'm sorry, Judge. 27 properties she borrowed. Don't run away from me. I would never do that, Judge. She borrowed $1.4 million to do it from just a few banks. And had those banks looked at their own documents, they'd see that that was being done on the grand sum of $3,800 a month gross in revenues. No bank could have looked at those things and relied on that loan as being a viable one. In the very way that Perano says disqualifies one from being a restitution victim. So there's no question that you don't have a victim here. And for purposes of quorum nobis, we all know that you need an ear of the most fundamental nature. But when you're ordering a citizen to pay $700,000 in restitution to a victim, who we all know to be a non-victim, is pretty fundamental. I'm sorry, Judge. No, go ahead. Go ahead. In terms of the other elements, one has to be that there's not another avenue of relief available. And to be sure there's not, I don't think that that's even in any part of a dispute. The third thing is that there has to be a sound reason for the theory to raise the issue. Earlier, Judge Rosenberg, that was your question, I think I addressed it. There are two things that really developed since the time of the initial sentencing, and one we've talked about, and that is the change in the law in terms of restitution and what qualifies this idea of reliance. But four years after the fact, this nation came to learn that these banks were right at the epicenter of everything that went bad. Right. And Judge Conelli said that you didn't connect up all those bad banking practices with this case. Well, respectfully, I disagree. And I pointed to Judge Conelli to the very documents I just described that were before this bank, that before these loans were shuffled off to the secondary market, if it had cared to look, it knew that those loans could never pass Monster, that they were passing off loans as being viable and valid, which they had to know, just were not. And there was plenty of other evidence. I cited it to Judge Conelli. It was ignored. It wasn't discussed. You know, you argued that the plea agreement limited the waiver to only the terms of incarceration because it referred to appealing any sentence imposed in accordance with paragraph 19. But that same provision also states that he waives the right to appeal the sentence on any grounds whatever. So doesn't that clearly include an order of restitution? Judge, I don't think so. Paragraph 13's waiver addressed paragraph 19's provision in terms of a sentence which dealt solely with incarceration. Mr. Stays, I can hear you, but I can't see your handsome face. So stay right where you are. I don't know quite how to respond to that, but there was no reference in paragraph 13 to paragraph 22, which dealt with restitution. It stood wholly alone. And it was only 19 that was the subject. It's expressly so, a paragraph 13's waiver. But having said that, this court, even in Sloan, where there was such a waiver, went on to address the merits of the case. And when you have a situation where, as I said, a citizen is called upon to pay $700,000, a father of four people, to a victim who is not a victim. Well, as to the appeal waiver, isn't the more fundamental point that this is not an appeal? This is a coram nobis? That's right, Judge. That is the essence of coram nobis. It's a collateral attack. That's right, Judge. And there was no, I mean, often we see an appeal waiver in tandem with a waiver of the right to collaterally attack the sentence. That's right, Judge. And that provision isn't in this plea agreement. I agree with you. But unless there are more questions, I'd like to reserve a little time for us to rebuttal. Thank you. Thank you. Ms. Wilson. Good morning, and may it please the Court, Counsel. Lukachek's arguments that the restitution order was erroneous because the victim banks were not victims under the MVRA was not supported by the evidence presented in this case. Therefore, we have a clear failure of proof in this case. His contention that somehow the banks were complicit in this fraud was not supported by any evidence presented. Minimally, he needed to show that the bank's conduct occurred at the same time as his fraud occurred. Are you abandoning your waiver argument? The waiver argument is with respect to the aspects of the plea agreement where he agreed, he argues that Ferrano somehow changes the law with respect to negligence and now there's a reliance aspect to it. In his plea agreement, he agreed that the banks relied on his misrepresentations. But you're not making an argument that this proceeding is covered by the appeal waiver because this is not an appeal waiver? The quorum notice aspect of this argument is separate, yes. If it's available. And unfortunately, if it's not available in this case, so the plea agreement would control and be dispositive of any challenge to his restitution obligation. Speaking of that, you noted in your brief that an audit of his restitution balance revealed that he, in fact, did not receive credit for certain payments by co-defendant Holt. And so I'm wondering if that's now been resolved. Are those payments being credited in a manner that will assure that that issue doesn't recur? And I also wonder what procedures are available to Wilkojec to ensure in the future that the proper amounts are credited. So that's a lot of questions. That's okay, Your Honor. I think I can remember them. The first question is with respect to how the payments were credited. Yes, there was an error in that. The problem with the case was that Holt's restitution judgment had an attachment to it. And as part of that attachment, it listed all the properties and all the co-defendants, including the victims. In that attachment, it did not have Wilkojec as a co-defendant for any of those victims. Therefore, when the forfeiture proceeds came in to the clerk's office, none of those proceeds were applied to Wilkojec's judgment. It wasn't until after we performed this audit that we realized that, in fact, some of those properties for which Holt was required to pay restitution on were also properties that Wilkojec was required to pay restitution. So that has been resolved. And not only have the forfeiture proceeds been applied, but any payments made by Holt that should have been applied have been applied at this point. Well, but the turnover order hasn't been corrected, has it? The turnover order doesn't affect that amount. The turnover order is with respect to wages that we were garnishing from his employer only. Right, but it lists a principal balance that is incorrect based on the failure to offset these amounts. Isn't that what your concession goes to? The concession goes to the principal balance, yes. Right, so the turnover order has to be corrected because it still refers to the old principal balance. I guess technically it would need to be corrected. However, it doesn't make a difference as to the amount that was being turned over. I think what happened is that at the time of the turnover order, it was technically correct because Holt's judgment didn't provide for joint and sever liability. So we need to resolve that by going back and having it clarified with the court that Holt is joint and severly liable. So technically it was not incorrect at the time of the turnover order because we weren't ordered to apply that to Wilkojec's balance. Right, but for purposes of this case, you're confessing error on that principal balance amount because there is joint and sever liability among those two co-defendants, but that's based on the actual properties themselves and not on Holt's judgment. Right, so that means that the bottom line that's listed in the turnover order is still wrong and needs to be corrected, even though as a practical matter, it's not going to affect how you collect this money. Is that the point? The turnover order, I will admit that the balance in that turnover order was before application of Holt's payments. However... Right, and you've explained why, which I get. Yes, but technically it's not wrong, and I don't think we need to amend the turnover order itself for it to be valid. Why not? Because Holt's judgment did not require that. Okay, that's very formalistic. It says he owes this amount of money, and he doesn't owe this amount of money. Right. Right? Correct. And based on your concession, it needs to be fixed. Certainly the bottom line needs to be fixed. The bottom line has been fixed on the balance that is at the U.S. Attorney's office as to the amount that he owes. Well, that's kind of like trust us, we're the government. Doesn't the order need to say the right number? Well, and to perhaps go a little bit outside of the record, the order, he's no longer working for that employer, so the order is no longer in place. Okay, well, you could have been told that at the top of the proceedings. I apologize. He's no longer being garnished by that particular employer. Just for information, is anybody paying on this except the one individual? No, many of the co-defendants are paying, yes. I can't tell you exactly how much, but we are making collections on most of the co-defendants in this case. So this turnover order is just non-operational? Well, the money has been turned over, and it is being held by the clerk of the court subject to the appeal. I believe that's what I've been told. The question is, are you pursuing another turnover order? No. How much money is owed, bottom line? At this point, there's 600. I apologize, Your Honor. Is the figure in your brief correct? It is in my brief, yes. Oh, okay. Yeah, I saw that. It should be 634 rather than 686. Yes, and that is prior to interest, so that's without the interest that's accrued on the debt. And the interest amount has also been adjusted on the debt as well. And this has been paid out to the bank? It's been submitted to the clerk's office. I can't guarantee that it's been paid out to the banks, yes. The 634 amount? No, oh, no, no, no, only the amounts that have been collected by the defendant and the co-defendants. The 634,000 is the balance that's still due on Mr. Wilkichek's restitution obligation, plus interest. So future turnover orders directed to other employers to collect the remainder will reflect the correct number? They will correct. I will make sure that they have the correct balance on them, yes. So with respect to Mr. Wilkichek's arguments as to Ferrano and how Ferrano has changed the standard, Ferrano was a case in which the court looked at whether refinancing banks were entitled to restitution. And they looked at whether the court, or this court, actually looked at whether the refinancing banks had relied on the initial misrepresentation because under the MVRA, they had to be, there had to be approximate, oh, excuse me, I'm sorry, I thought I was out of time. They couldn't be victims under the MVRA unless they were directly harmed by the misrepresentations. In Ferrano, the court simply said, we can't tell based on the record whether they're what the refinancing banks relied on this misrepresentation. So they sent it back to the district court to review that. The whole reliance aspect is dicta, and it's with respect to secondary victims. It's not with respect to the initial victims. And the negligence that was involved in those cases was still applicable to the original victims. The original victims, if there was negligence in their review of the loan packages, they were still considered to be victims in that case. It was the refinancing banks that they looked at that could no longer be victims. So it doesn't really apply in this case, the reliance aspect. So, I mean, the same name, the bank has the same name, right? I mean, it's Bank of America Summer Refinancing Bank. Is it a refinancing bank or an initial lender bank? Well, they had an initial lender bank, and there was a huge time span between when the case was brought and when it was brought on appeal or brought to sentencing. During that time period, many of the purchasers had gone in and refinanced their bank. The government was attempting to take those refinancing bank losses and include those in restitution. The court says, we don't know whether they actually relied on the initial misrepresentation that was part of the fraud. So, therefore, we need to go back and make a determination to see whether there was a reliance on that. It didn't have anything to do with the initial banks that may have been no reliance or reliance on those misrepresentations. Now, with respect to quorum novus relief, there are three elements that they must prove. The first element is that the issuance of the judgment was in error that would render the judgment invalid. That can't be. I'm sorry. I'm out of time. Continue. I'll let you continue. We'll give counsel an equal amount of time. In this case, there can be no error. Wilkichek has proved that there is no evidence to implicate that this judgment could be invalid because the victims, there was no proof that the victims were not victims in this case. There was no temporal relation between the settlements and his fraud, time-wise, subject matter-wise, or otherwise. And if you have no further questions, we ask that the court affirm the petition for a quorum novus and the motion for turnover. Thank you. How much time do we have? You've got two minutes additional time. Just one quick point. The idea that the reliance exegesis was dicta seems to me to ignore the opinion, and it ignores the statute. Reliance is an inherent component of proximate cause. That is in the Mandatory Victim Restitution Act. So the idea that when Judge Posner was talking about that he was just spouting off for some sort of intellectual exercise I think is unpersuasive. In terms of actual evidence that these banks participated in this fraud, it is idle to suppose that these banks who participated in billions and billions of dollars worth of frauds back at that time that swept the nation somehow excluded Chicago. That's all I have. Thank you. Thank you, counsel. Thanks to both counsel. The case is taken under advisement.